IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| James Wilkinson, # 322936, ) | |
| ) | Civil Action No. 6:15-1877-MGL-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Warden of Tyger River Correctional ) Institution, ) | |
| ) | |
| Respondent. ) | |

      The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

      Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

      The petitioner is currently incarcerated at Tyger River Correctional Institution in the South Carolina Department of Corrections ("SCDC"). He was indicted by the Richland County Grand Jury in October 2006 for one count of attempted kidnapping (2006-GS-40-5976) (app. 334-35). The petitioner was represented by Kristy M. Grafton and Jennifer C. Davis, Assistant Public Defenders for Richland County (app. 1-199). The State was represented by Assistant Solicitors Richard C. Cathcart and Margaret Fent, both of the Fifth Judicial Circuit Solicitor's Office (*id*.). On September 12-13, 2007, the petitioner was tried by a jury before the Honorable L. Casey Manning, Circuit Court Judge (*id*.). On

September 13, 2007, the petitioner was convicted of attempted kidnapping and sentenced to 20 years imprisonment (app. 185-86, 198).

***Underlying Case Facts***

On June 7, 2006, the petitioner followed the victim (an employee of the University of South Carolina School of Law) as she left work and walked to her car, which was parked in the Coliseum parking lot a few blocks away. The petitioner followed her closely through a tunnel that led to the parking lot. The victim testified that she walked as fast as should could out of the tunnel and into the parking lot and that she felt the petitioner was no longer close to her. She got to her car and put her purse inside. As she was getting ready to get inside the vehicle, the petitioner appeared and tried to force her into the car by "physically trapping [her] with his arms and pushing his whole body." The victim testified that he "very strongly . . . very forcefully" told her twice to get in the car (app. 53-55, 61-71, 78-82, 83-84)

The victim managed to get away from the petitioner and ran toward another person[1] in the parking lot and asked for help. The person that the victim approached for help called the police. The victim described her assailant to the police. A short time later, the police received another call about an individual matching the description who was causing a disturbance inside the lobby of the campus fitness center. The petitioner, who was extremely intoxicated, was arrested for disturbing the school. The petitioner later told law enforcement that he had followed the victim from the law school through the tunnel and into the parking lot. He stated he only wanted to use her phone. The victim later identified the petitioner in a photo lineup (app. 72-76, 87-88, 91, 93-95, 100-06).

---

[1]The person the victim approached, Robert Bush, also testified at the petitioner's trial (app. 85-92).

2

*Direct Appeal*

The petitioner filed his notice of appeal on September 21, 2007 (doc. 17-3). On appeal, the petitioner was represented by Elizabeth A. Franklin-Best, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense (*see* app. 200-23). In the petitioner's amended final brief, he contended the trial judge erred in denying his motion for a directed verdict when the jury had to be re-charged on the definitions of "attempt" and "kidnap" and spent nearly five and a half hours deliberating the case. (app. 217-21).

The State filed a final brief dated December 22, 2008 (app. 224-37; doc. 17-4). In an unpublished opinion filed March 1, 2010, the South Carolina Court of Appeals affirmed the petitioner's conviction (app. 238-39). In the opinion, the Court of Appeals noted that the petitioner argued that the trial court erred in denying his motion for a directed verdict. The Remittitur was issued on March 17, 2010, and filed by the Richland County Clerk of Court on March 18, 2010 (doc. 17-5).

*PCR*[2]

On May 10, 2010, the petitioner filed an application for post-conviction relief ("PCR") (2010-CP-40-3049), asserting claims of ineffective assistance of counsel (app. 240-46, 252; *see* doc. 17-6). Specifically, the petitioner asserted trial counsel's cross examination of witness Robert Bush was improper where she failed to bring out inconsistencies in his testimony versus his initial statement (app. 246). The petitioner further asserted that trial counsel failed to adequately advise him of the dangers of proceeding to trial where the trial judge, as well as the victim, had strong ties to the

---

[2]In the return and memorandum, the respondent notes that part of the PCR application was not properly copied in the appendix. A complete copy was filed as document number 17-6. Portions of the PCR court's order of dismissal were illegible in the appendix (app. 325-30). The respondent filed the order of dismissal as document number 17-7. Also, page 260 in the appendix appears to have been inadvertently left blank in the original.

3

University of South Carolina (*id*.). Third, he asserted trial counsel was ineffective in failing to meet with the petitioner to discuss the case and map out a viable defense strategy (*id*.). The State served its return on July 20, 2010 (app. 247-51).

The petitioner also filed an amended application (doc. 17-7). In the amended application, the petitioner raised five new claims that were considered by the PCR court. First, he asserted trial counsel was ineffective for failing to object to Judge Manning hearing the matter. Second, he claimed trial counsel was ineffective in failing to challenge the State's position that the petitioner told the victim to get in the car more than once. Third, he argued trial counsel was ineffective in failing to advise the petitioner on the benefits of testifying. Fourth, he claimed trial counsel was ineffective in failing to meet with the petitioner for a sufficient amount of time prior to trial. Fifth, he alleged trial counsel was ineffective in failing to object to the trial court's instructions to the jury (*id.*).

On October 3, 2011, an evidentiary hearing was held before the Honorable G. Thomas Cooper, Circuit Court Judge (app. 253-320). The petitioner was present and was represented by Mathias Chaplain (*id*.). The State was represented by Assistant Attorney General Brian Petrano (*id*.). The PCR Court filed an order of dismissal on February 8, 2012 (app. 321-32; doc. 17-8).

In the order, the PCR court noted it had the opportunity to review the entire record and had evaluated the testimony at the PCR hearing (app. 325). The petitioner explained that his counsel should have asked Judge Manning to recuse himself from this trial because the judge attended the University of South Carolina and played basketball there. The attempted kidnapping occurred in the parking lot near the Coliseum (the school's basketball arena). The petitioner claimed that he never got to tell "his side of the story" at the hearing; and that if the proper questions had been asked the jury would have understood that he only said "get in the car" one time to the victim as opposed to the victim's assertion at trial that he told her to get in the car twice (app. 71). The petitioner testified that counsel was ineffective for advising him not to testify so that she could have

4

final argument. The petitioner's main claim was that the trial judge "threw a monkey wrench into my china cabinet." The petitioner explained that the trial judge improperly commented on "safety issues" related to the jury and the walk to their cars late at night. He maintained this comment severely tainted the jury given the nature of the offense described at trial (app. 182, 325). The petitioner's final claim was that the word "attempt" was not in his indictment (*id.*).

Trial counsel testified that she advised the petitioner not to testify as she concluded it would be damaging. She explained that, if he took the stand, there was the potential of evidence being admitted that showed he had talked to another individual about car jacking someone. Trial counsel also testified that in hindsight she probably should have requested a mistrial based on the trial court's comments (app. 326).

The PCR court found the petitioner's testimony was not credible while trial counsel's testimony was credible. Accordingly, the PCR court found the petitioner had failed to prove the both prongs of the test under *Strickland v. Washington*, 466 U.S. 668 (1984) that counsel failed to render reasonably effective assistance under prevailing professional norms and that he was prejudiced by counsel's performance (app. 327).

The PCR court noted there was no evidence of any bias in the trial court's rulings; there was no merit to the petitioner's claim that counsel should have requested that the trial judge recuse himself merely because he went to the university where the petitioner chose to commit a crime (app. 327).

With respect to the petitioner's claim that he did not get to tell his side of the story, the PCR court found the claim had no merit. First, there was no evidence of deficient performance as to trial counsel's advice because she articulated valid strategic reasoning (app. 327-28). Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Whitehead v. State*, 417 S.E.2d 530 (S.C. 1992). *See also Dempsey v. State*, 610 S.E.2d 812 (S.C. 2005).

5

Counsel explained that, at best, the petitioner's testimony would be damaging; she was also concerned about the potential, however slight, that a statement of his that he intended to carjack someone would come into play (app. 328). Finally, the record reflected, as the petitioner himself explained, trial counsel wanted final closing argument (*id.*). Presenting the witnesses would have resulted in the waiver of counsel's right to last argument, which is "a substantial right." *State v. Mouzon*, 485 S.E.2d 918, 921 (S.C. 1997) (where a defendant in a criminal prosecution introduces no testimony, he is entitled to the final closing argument to the jury); *State v. Pinkard*, 617 S.E.2d 397, 398 (S.C. Ct. App. 2005) ("The right to open and close the argument to the jury is a substantial right, the denial of which is reversible error"). Moreover, the PCR court found the petitioner did not suffer prejudice as to this claim. The petitioner testified at the PCR hearing to tell "his side of the story," as he theoretically would have at the trial. The PCR court found the testimony not credible and that trial counsel's advice for him not to testify at trial was not deficient. The PCR court noted that the petitioner essentially confessed to kidnapping (not attempt)on the stand at the hearing (app. 328-29).

With regard to the safety comment by the trial court,[3] the PCR court noted that the trial was on September 13, 2007, which would have been a Thursday (app. 329). The PCR court stated that the comment was to everyone, not just the jury. The comment

---

[3]The comment at issue by the trial judge was as follows:

> What I'm about to say to you I've said to the lawyers, the Defendant, everybody else involved.
>
> It's 8:00. I don't want to rush you in any way, shape or form. But I've become a little concerned about the hour that we're here. I know you've got to go to your cars and get home. It's somewhat of a safety issue. And you must be somewhat tired.
>
> So what I want you to do, discuss among yourselves whether or not you want to stop tonight and resume in the morning or whether you wish to continue deliberating tonight.

(App. 182).

was just about the lateness of the hour after a long day in court. There was no indication that the trial judge was commenting on the facts of the case. The PCR judge found that the trial court was correct in noting potential security issues leaving the Richland County Courthouse on the corner of Assembly and Blanding Streets at night to cross the street to the parking garage. The trial judge was responsible for providing a fair trial to for both sides (app. 329-30). His comments to the jury were related to this role as it related to trial management. After the jury left the courtroom, the trial court explained his comment. "I looked at them. They looked tired to me. Maybe they'll likely want to say, let's go home and resume tomorrow. I hope they will" (*see* app. 183-84). The PCR court noted that even after the verdict, the trial judge explained, "we've got to make sure the deputies take each and every one of you to your cars, that you're escorted there safely" (app. 330 (citing app. 190)). Therefore, the PCR court found that the petitioner had failed to satisfy his burden of proof and demonstrate that counsel's performance was deficient for failing to request a mistrial. As to the directed verdict issue, the PCR court found there was ample evidence from the victim's testimony to submit the case to the jury. Accordingly, the PCR court concluded that the petitioner had not established any constitutional violations and denied and dismissed his application with prejudice (app. 330-31).

***PCR Appeal***

On February 14, 2012, the petitioner filed his notice of appeal (doc. 17-9). On appeal, petitioner was represented by Dayne C. Phillips, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. The petitioner filed a petition for writ of certiorari, arguing trial counsel provided ineffective assistance of counsel because she failed to object and request a mistrial during deliberations when the trial court made a prejudicial comment to the jury, which mirrored the facts of the case and created an improper inference to the jury to place themselves in the shoes of the victim (doc. 17-10). The State served its return on February 2, 2013 (doc.

17-11). On November 22, 2013, the South Carolina Supreme Court transferred the petitioner's appeal to the South Carolina Court of Appeals (doc 17-12). On September 24, 2014, the South Carolina Court of Appeals denied the petition for writ of certiorari (doc. 17-13). The Remittitur was issued on October 10, 2014, and was filed by the Richland County Clerk of Court on October 16, 2014 (doc. 17-14).

.                            **FEDERAL PETITION**

On May 4, 2015, the petitioner filed his Section 2254 petition (doc. 1). On August 31, 2015, the respondent filed a motion for summary judgment (doc. 18). By order of this court filed September 1, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On September 16, 2015, the petitioner filed a response in opposition (doc. 21).

In his federal petition, the petitioner makes the following claims:

**Ground One**: Trial counsel cross examination of witness and victim was improper where she did not impeach them on police statement and testimony.

Supporting Facts: On the police statement witness said that he did not think he could even identify a man because he did not see them. He said he only seen Applicant briefly from the side at a distance. But in his testimony a year latter he seemed to know who the defendant was. So apparently was told by state who he was. And trial counsel could have impeached the victim from her initial statement and her testimony on the stand.

**Ground Two**: Trial counsel was ineffective for failing to ask for a change of venue.

Supporting Facts: Because of the prejudice it caused the defendant. Because of the damages of proceedings to a trial where trial judge as well as victim and witness have strong ties to USC Juries tend to view judge is the embodiment of the law. Also the judge is a anouncer[sic] at USC Basketball games. Also a alumnus. It affected and influenced the outcome. Also victim was a employed at USC.

>**Ground Three**: Trial counsel was ineffective for not asking for a mistrial when she admitted it in the PCR hearing.
>
>Supporting Facts: In the order by the court they said that Trial lawyer testimony was credible. And she said "Quote" "when the jury was out over twice the length of the trial itself, I think, I did not think it through. But I think now looking back and even then looking back shortly thereafter when the judge state that it was a safety issue for the jurors to walk to their cars during this trial, I should have ask for a mistrial. I should have objected at the minimum. And I should have asked for a mistrial. I didn't do either….

(Doc. 1 at 5, 7, 8).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non–movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non–moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non–moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position

is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc's Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Exhaustion***

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17–27–10,–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[4]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

10

"outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

The petitioner raised the claim now raised in Ground Three in his state PCR application, and the PCR court ruled upon that claim. The petitioner then raised the claim as the sole issue in his petition for writ of certiorari. Accordingly, the petitioner has exhausted his available state post-conviction remedies. However, the respondent argues that Grounds One and Two, which are technically exhausted, are procedurally barred from federal habeas review, as will be discussed below.

***Procedural Bar***

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person

has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)). To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the United States Supreme Court carved out a "narrow exception" that modified the "unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318-19, 1320-21). The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

Here, the respondent argues that Grounds One and Two are procedurally barred from federal habeas review. The undersigned agrees. In Ground One, the petitioner asserts trial counsel was ineffective in failing to impeach a witness to the attempted kidnapping with his statement to law enforcement and in failing to impeach the victim with her initial statement. The petitioner raised the claim regarding impeachment of the witness in his application for PCR (app. 246; doc. 17-6 at 7). The petitioner did not raise the claim regarding impeachment of the victim in his original or amended PCR applications. Further, the PCR court did not rule upon the claims, and no Rule 59(e) motion to alter or amend judgment was filed. Thus, the claims were unavailable for further

collateral review.  *See Marlar*, 653 S.E.2d at 267.  Moreover, the claims were not raised in the petition for writ of certiorari.

In Ground Two, the petitioner asserts trial counsel was ineffective in failing to move for a change of venue based on the connections of the victim, a witness, and the trial judge with the University of South Carolina.  In the application for PCR, the petitioner raised a similar claim, alleging that trial counsel failed to advise him "of the dangers of proceeding to trial where trial judge as well as victim have ties to U.S.C." (app. 246; doc. 17-6 at 7).  This claim was ruled upon, in part, by the PCR judge in a slightly different form as follows:

> There is no evidence of any bias in the trial court's rulings; there is no merit to the Applicant's claim that counsel should have requested that the trial judge recuse himself merely because he went to the university that the Applicant chose as his crime scene.  This Court takes judicial notice that the trial judge is a "color analyst" for the University of South Carolina basketball games.

(App. 327).  As to the portion of the claim regarding the connections of the victim and the witness with the University, no Rule 59(e) motion to alter or amend was filed, and no part of Ground Two was raised in the petition for writ of certiorari.  Since the petitioner did not properly present these claims to the South Carolina appellate courts in a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise these claims now to be procedurally improper, these claims are procedurally barred from review in federal habeas corpus absent a showing of cause and prejudice or actual innocence.

The petitioner has expressed no particular cause for procedurally defaulting on these grounds (*see generally* docs.1, 21).  Further, the petitioner has made no showing of actual innocence, and, as argued by the respondent (doc. 17 at 19), any assertion of such would be incredible given the testimony of the victim and another witness at trial (app. 71-73, 86-88) and the victim's identification of the petitioner in a photo lineup (app. 76).  As

14

the petitioner has failed to show cause and prejudice or actual innocence, Grounds One and Two are procedurally barred from review in this federal habeas action.

***Merits***

In Ground Three, the petitioner asserts trial counsel was ineffective for not asking for a mistrial or objecting to the following statement by the trial judge:

> What I'm about to say to you I've said to the lawyers, the Defendant, everybody else involved.
>
> It's 8:00. I don't want to rush you in any way, shape or form. But I've become a little concerned about the hour that we're here. I know you've got to go to your cars and get home. It's somewhat of a safety issue. And you must be somewhat tired.
>
> So what I want you to do, discuss among yourselves whether or not you want to stop tonight and resume in the morning or whether you wish to continue deliberating tonight.

(App. 182). The PCR court denied relief upon this claim on the merits (app. 329-30), and the petitioner presented the claim as his sole issue in the petition for writ of certiorari (doc. 17-10), which was denied (doc. 17-13).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented

15

> a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257–58 (4th Cir. 1999).

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). However, the review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

The petitioner cannot show the PCR court's denial of relief was the result of an unreasonable determination of the facts as the factual findings in this case are supported by the record. First, the PCR court noted that trial counsel testified that, looking back, she probably should have requested a mistrial based on the trial court's comments

(app. 326; *see* app. 302). The PCR court also noted that the petitioner testified that the trial court's comment tainted the jury because the crime with which he was charged was so similar, i.e. an attempted attack on a woman walking to her car (app. 325; *see* app. 273-74)). The PCR court quoted the trial court's statement at issue and stated that he did "not share the [petitioner's] interpretation of the trial judge's . . . comment" (app. 329). The PCR court noted that the comment was made to everyone in the courtroom, not just the jury, and the comment was just about the evening getting late after a long day in court (app. 329-30 (citing app. 182-83)). The trial transcript shows that the trial judge made the above comment at 8:00 p.m., after the jury had been deliberating for approximately five hours (*see* app. 168). After the trial judge requested that the jury let him know whether they wanted to stop for the night or continue deliberating, the jury responded that they wanted to continue deliberating (app. 182-84). The jury returned with a guilty verdict approximately 20 minutes later (app. 185). As noted by the PCR court, there was no indication that the trial judge was commenting on the facts of the case. The trial court was responsible for providing a fair trial to both sides, and the trial judge's comment was logically related to this role as it related to scheduling (app. 330). The PCR also noted that, after the jury left the courtroom, the trial judge explained the comment. "I looked at them. They looked tired to me. Maybe they'll likely want to say, let's go home and resume tomorrow. I hope they will" (app. 330 (quoting app. 183-84)). Further, even after the verdict, the trial judge explained, "[W]e've got to make sure the deputies take each and every one of you to your cars, that you're escorted there safely" (app. 330 (quoting app. 190)). Since the PCR court's factual findings are supported by the record, the petitioner has failed to show that the denial of relief was based upon an unreasonable determination of the facts.

The petitioner also cannot show the PCR court unreasonably applied federal law in denying relief upon this claim. The PCR court utilized the proper standard of review under *Strickland,* and the petitioner cannot show the PCR court's denial of relief was an

unreasonable application of *Strickland* (app. 326-27, 329-30).  The PCR court found that the petitioner had failed to demonstrate that trial counsel's performance was deficient for failing to request a mistrial, and the petitioner had made no showing of prejudice (app. 330). The record establishes the trial judge's comments in no way functioned as commentary on the specific facts of the petitioner's case, nor could those comments have been implied as such by any reasonable juror under the circumstances.  The trial judge did not relate his safety concerns for the jury and courtroom personnel to any fact or piece of evidence presented in the petitioner's case, nor did he insinuate to what specific "safety concerns" he was referring.

"It is well established that a trial judge must refrain from any comment which tends to indicate his opinion as to the weight or sufficiency of the evidence, the credibility of witnesses, the guilt of an accused or any fact in controversy." *State v. Brisbon*, 474 S.E.2d 433, 437 (S.C. 1996) (citations omitted).  It was reasonable for the PCR court to find the trial judge's comment was not an improper comment on the facts of the petitioner's case.  Further, while the respondent recognizes (doc. 17 at 28-29) that a jury charge may not always be sufficient to cure improper comments by a trial judge, here, throughout the course of the trial, the judge repeatedly emphasized to the jurors that he, as the presiding judge on the law, was not able comment or have any stance on the facts of the case as the jury alone is the finder of fact.  Those roles were explained to the jury during the opening instructions (app. 48, 51) and were also reiterated in the final jury instructions (app. 154) and in the court's response to the jury's questions during deliberations (app. 173-74). Accordingly, the petitioner has failed to show the PCR court unreasonably applied federal law in denying relief upon this claim, and, therefore, he is not entitled to relief under 28 U.S.C. § 2254(d)(1).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 18) be granted. The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

April 8, 2016
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).